# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

NANA GYAU, *et al.*,

    *Plaintiffs*,

v.

MATTHEW G. WHITAKER, Acting Attorney General of the United States, *et al.*,

    *Defendants*.

Civil No. 1:18-cv-1373

Hon. Liam O'Grady

## MEMORANDUM OPINION & ORDER

Plaintiff Elizabeth Toku filed an I-130 Immigration Petition for Alien Relative on behalf of her husband, Plaintiff Nana Gyau. Defendants denied the Petition under 8 U.S.C. § 1154(c) because they determined that Mr. Gyau had previously entered into a marriage with Latasha Robinson for the purpose of evading the United States' immigration laws. Plaintiffs allege that the denial of the Petition was arbitrary and capricious in violation of the Administrative Procedure Act and violated their due process rights. Now before the Court are the parties' cross Motions for Summary Judgment (Dkts. 26 & 30). The motions were fully briefed and the Court heard oral argument on February 22, 2018. For the reasons stated below, and for good cause shown, Plaintiffs' Motion for Summary Judgment (Dkt. 26) is hereby **DENIED** and Defendants' Motion for Summary Judgment (Dkt. 30) is hereby **GRANTED**.

## I. BACKGROUND

### A.    Regulatory Background.

If a non-citizen marries a United States citizen, the non-citizen's citizen-spouse can file an I-130 Petition with the United States Citizenship and Immigration Services ("USCIS") for the

non-citizen-spouse to obtain an immigrant visa. *See* 8 U.S.C. § 1154(a). After the citizen-spouse provides documentation of his/her bona fide marriage to the non-citizen, United States Citizenship and Immigration Services ("USCIS") undertakes an investigation to determine whether to grant the petition. *See* § 1154(b). An I-130 Petition *must* be denied if there is "substantial and probative evidence" demonstrating that the alien-beneficiary had previously entered into a fraudulent marriage "for the purpose of evading the immigration laws." 8 C.F.R. § 204.2(a)(1)(ii); *accord* 8 U.S.C. § 1154(c); *Armah-El-Aziz v. Zanotti*, 2015 WL 4394576, at *4 (E.D. Va. July 16, 2015).

If USCIS determines that the non-citizen has previously entered into a fraudulent marriage, it issues a Notice of Intent to Deny the Petition ("NOID"). 8 C.F.R. § 103.2(b)(8)(iv). The petitioner then has an opportunity to submit additional documentation and written argument in response to USCIS's rationale for its intended denial. *Id.* §§ 103.2(b)(11), (b)(16)(i). If, after receiving and considering the petitioner's response, USCIS denies the Petition, the petitioner may then appeal to the Board of Immigration Appeals ("BIA"). *See* 8 C.F.R. § 1204.1. The BIA reviews all issues in a USCIS decision *de novo*. 8 C.F.R. § 1003.1(d)(3)(iii).

If the BIA dismisses the appeal, the petitioner can then appeal to a United States District Court under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, for a determination of whether the BIA's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," § 706(2)(A).

### B. **Factual Background.**

Mr. Gyau is citizen a Ghana who has lived in the United States since 2004. AR955, AR1052. Mr. Gyau's visitor visa expired on November 23, 2004, but he did not leave the

country. AR1052. Instead, less than four months later, Mr. Gyau married Latasha Robinson on March 8, 2005. *Id.*

### *i. Mr. Gyau's Marriage to Ms. Robinson & Ms. Robinson's Two I-130 Petitions.*

Two months after their marriage, in May 2005, Ms. Robinson filed an I-130 Petition on behalf on Mr. Gyau. AR1052–53. On September 1, 2005, Ms. Robinson wrote and signed a handwritten letter withdrawing her sponsorship of Mr. Gyau, stating that she stopped living with Mr. Gyau in early July 2005.[1] AR925.

On September 5, 2009, Mr. Gyau and Ms. Robinson formally separated. AR829.

Ms. Robinson then conducted an interview with USCIS on March 16, 2010 regarding her I-130 Petition for Mr. Gyau. *See* AR923–24. During that interview, Ms. Robinson signed a handwritten "admission" that her marriage to Mr. Gyau was fraudulent, she had never lived with him, and she was withdrawing her sponsorship of him. AR924. Her letter reads, in its entirety:

> I Latasha Robinson married Nana Obour Gyau to help him get a green card. I got 500.00 dollars down and 300.00 dollars a month for 5 years. I have never lived with him. I want to withdraw all support from this petition. I never physically or emotionally abused him. [Signature, DC address].

AR924. USCIS acknowledged Ms. Robinson's withdrawal of the petition on March 16, 2010, the same date as her interview. AR923.

About a month later, on April 13, 2010, Ms. Robinson filed a second I-130 Petition on behalf of Mr. Gyau, even though they were still separated. AR1048–49. Mr. Gyau and Ms. Robinson's divorce was finalized on July 27, 2010. AR828–31. Ms. Robinson's second petition was ultimately denied in October 2012 because she and Mr. Gyau were divorced. AR1057 –58.

---

[1] The tax documents in the administrative record appear to corroborate Ms. Robinson's statement that she was not living with Mr. Gyau. Mr. Gyau's joint tax filings with Ms. Robinson indicate that they lived together in Virginia in 2005 and 2006, but Ms. Robinson's W-2s for those years indicate that she was not living in Virginia. *Compare* AR103–10, *and* AR114–27, *with* AR111, *and* AR128.

3

### ii. Mr. Gyau's Marriage to Ms. Toku & Ms. Toku's First I-130 Petition.

On August 20, 2010, Mr. Gyau married his current wife, Elizabeth Toku (while Ms. Robinson's second petition was still pending). AR957. There is no dispute that Mr. Gyau and Ms. Toku entered into a bona fide marriage. On February 4, 2011, Ms. Toku filed a I-130 Petition on behalf of Mr. Gyau, which was granted on March 6, 2012.[2] AR947–48.

On May 30, 2012, USCIS issued a Notice of Intent to Revoke ("NOIR") Ms. Toku's petition. AR921–22. The NOIR explained that a review of the record indicated Mr. Gyau had married Ms. Robinson to evade the United States' immigration laws. AR921. The agency cited the following in support of its conclusion: (1) Ms. Robinson's March 26, 2010 letter (her "confession") stating that the marriage was fraudulent, which the agency transcribed except for the last sentence about lack of abuse; (2) Ms. Toku and Mr. Gyau's statements demonstrating that they were dating when Ms. Robinson conducted her 2010 interview; and (3) Mr. Gyau and Ms. Robinson's divorce decree, which showed they were separated when Ms. Robinson confessed that the marriage was fraudulent. AR921–22.

In response to the NOIR, Ms. Toku submitted a handwritten, notarized "affidavit" signed by Ms. Robinson which stated that Ms. Robinson had been "set up" and "coerced by the US CIS" to withdraw her prior petition, but did not provide any facts to support or explain Ms. Robinson's assertions. AR171–72. Ms. Robinson also stated that she married Mr. Gyau "in good faith but [their] relationship did not work out." AR171.

USCIS considered the additional evidence brought forth by Ms. Toku, but ultimately decided that Ms. Robinson's earlier confession was more credible than her later retractions because: (a) if Ms. Robinson had actually been coerced, she likely would have mentioned it

---

[2] Ms. Robinson's second petition was still pending at this time.

sooner; (b) Ms. Robinson withdrew her sponsorship of Mr. Gyau shortly after submitting her first petition; (c) Ms. Robinson did not disclose that she and Mr. Gyau were formally separated during her March 2010 interview; and (d) Ms. Robinson's second petition falsely stated that she and Mr. Gyau were living together. AR913. USCIS therefore formally revoked Ms. Toku's petition because it determined that Mr. Gyau's administrative file "cumulatively constitute[d] substantial and probative evidence" that Mr. Gyau's marriage to Ms. Robinson was fraudulent. AR914.

Ms. Toku appealed to BIA, and the BIA agreed with USCIS that there was substantial and probative evidence of marriage fraud in Mr. Gyau's administrative record. AR711. The BIA explained that Ms. Robinson's confession should be given more weight than her retraction because (a) the retraction was filed more than two years later, and (b) there is no evidence in the record corroborating Ms. Robinson's statement that she was under duress when she signed her confession. *Id.* The BIA therefore dismissed Ms. Toku's appeal on August 22, 2014. AR710–11.

### *iii. Ms. Toku's Second I-130 Petition (The Petition on Appeal).*

Ms. Toku filed a second I-130 Petition in August 2015. AR721–27. In support of her second petition, Ms. Toku filed various documents to show that her husband's prior marriage to Ms. Robinson was bona fide. *See* AR 504–05. For example, Ms. Toku submitted copies of joint lease agreements, jointly filed tax returns, a vehicle certificate of title, an insurance record, photocopies of a joint financial records, and a letter from Ms. Robinson's mother. *Id.*

USCIS reviewed all of the documents submitted by Ms. Toku as well as the record from the prior petitions submitted on behalf of Mr. Gyau, but again issued a NOID. AR49–52. The agency explained that "[w]hile some of the evidence can be accepted as substantiating a bona fide marital relationship, there were deficiencies noted in others, and when viewed in its entirety,

the evidence submitted is not sufficient to establish that" Mr. Gyau's prior marriage to Ms. Robinson was bona fide. AR51. For example, USCIS drew attention to the fact that the submitted financial records showed "minimal activity" or were not accompanied by any account statements, the letter from Ms. Robinson's mother was nine years old, and Ms. Robinson's recantation was dated "over two years from her alleged maltreatment and coercion by USCIS Officers." AR51–52.

In response to the NOID, Ms. Toku submitted, among other evidence, a typed, signed and notarized 2016 statement from Ms. Robinson that largely repeated her earlier recantation, but also added that Ms. Robinson "did not submit an affidavit sooner after the interview because [she] was unaware that anything could be done in response to the coercion [she] dealt with by the USCIS Officer." AR189. Ms. Toku's attorney also submitted a 12-page memorandum opposition to the NOID. AR36–48.

USCIS reviewed all the documents submitted by Ms. Toku and the records from the prior proceedings, but again rejected Ms. Toku's petition because it believed there was substantial and probative evidence that Ms. Gyau's marriage to Ms. Robinson was fraudulent. AR25–29. The agency explained that Ms. Robinson's confession in 2010 was more credible than her later retractions given the evidence contemporaneous to her confession and the lack of corroborating evidence of coercion. AR27–28. The agency further explained that the additional documentation and testimony submitted by Ms. Toku was "not sufficient to overcome the probative and substantial evidence of marriage fraud contained in the record," in part because of the deficiencies with the documents USCIS had previously noted. AR28.

Ms. Toku again appealed to the BIA. AR11–23. After a de novo review of USCIS's decision and the administrative record, the BIA agreed with USCIS that Mr. Gyau's marriage to

Ms. Robinson was fraudulent and dismissed Ms. Toku's appeal. AR4–6. The BIA found that Ms. Robinson's 2005 petition withdrawal and 2010 confession were "critical documents" showing that her marriage to Mr. Gyau was fraudulent. AR5. The BIA also explained that the additional documents submitted by Ms. Toku were insufficient to overcome the "substantial and probative evidence" that Mr. Gyau's prior marriage was fraudulent because Ms. Robinson's later statements did not explain how/why she felt threatened, Ms. Robinson did not offer any explanation for her 2005 statement, the bank records submitted showed minimal activity, and the insurance documents lacked employer endorsements. *Id.*

Ms. Toku appealed to this Court and both parties filed motions for summary judgment.

## II. LEGAL STANDARD

The Court may overturn the agencies' I-130 Petition denials only if the denials are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Judicial review under this standard is "highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009). While the Court's "inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one," and the Court "is not empowered to substitute its judgment for that of the agency." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). So long as there is a rational basis in the record to support the agencies' denials of the I-130 Petition, this Court must affirm the agencies' decisions. *Ohio Valley*, 556 F.3d at 192.

## III. ANALYSIS

Plaintiffs' primary complaint with the agencies' denials of the I-130 Petition is that the Plaintiffs disagree with the agencies' weighing of the evidence in the record. The agencies'

decisions, however, reflect a complete review of the entire administrative record and explain why the agencies believed there was substantial and probative evidence of marriage fraud despite Ms. Robinson's later retractions and the additional documents submitted by Ms. Toku. *See* AR4–6 (BIA's decision), AR25–29 (USCIS's decision). The Court must defer to BIA and USCIS's credibility judgments and weighing of the evidence. *Gonahasa v. INS*, 181 F.3d 538, 542 (4th Cir. 1999). Moreover, the administrative record clearly provides a rational basis supporting the agencies' findings of substantial and probative evidence of marriage fraud. Other courts who have reviewed similar records have consistently affirmed agencies' denials of I-130 Petitions under 8 U.S.C. § 1154(c). *E.g.*, *Ogbolumani v. Napolitano*, 557 F.3d 729 (7th Cir. 2009); *Armah-El-Aziz*, 2015 WL 4394576; *Seghal v. Johnson*, 105 F. Supp. 3d 860 (N.D. Ill. 2015); *Rojas v. Johnson*, 2014 WL 12527213 (M.D. Fla. Nov. 26, 2014); *Kazinetz v. USCIS*, 2014 WL 2696575 (S.D. Fla. June 13, 2014); *Adi v. United States*, 2011 WL 9613 (N.D. Ohio Jan. 3, 2011).

Plaintiffs' other arguments that the agencies' decisions were arbitrary and capricious are similarly unavailing, and other courts have rejected similar arguments in the past. The agencies were permitted, and indeed had a duty, to investigate Mr. Gyau's prior marriage and review the administrative records from prior petitions filed on his behalf to determine whether his marriage to Ms. Robinson was fraudulent. *Bangura v. Whitaker*, 2019 WL 418858, at *2 (E.D. Va. Feb. 1, 2019); *Seghal*, 105 F. Supp. 3d at 863 ("The government may look at all relevant evidence, including evidence originating from the agency's prior dealings with the beneficiary," to determine if the beneficiary had previously engaged in marriage fraud.).The agencies were also permitted to rely on Ms. Robinson's confession statements even though they were hearsay and even if her interviewers did not comply with the agencies' guidelines. *Diaz v. USCIS*, 499 F. App'x 853, 855 (11th Cir. Nov. 27, 2012) (explaining that field manuals and internal

administrative guidance documents do not have the force or effect of law and do not confer substantive federal rights); *Ogbolumani*, 557 F.3d at 734 (noting that agencies are permitted to rely on hearsay statements so long as the evidence is "probative and its use is not fundamentally unfair").

Finally, to the extent Plaintiffs raise a due process argument, that argument similarly fails. As an initial matter, Plaintiffs appear to have waived any argument that their due process rights were violated because they did not raise those arguments in the administrative proceedings below. *Armah-El-Aziz*, 2015 WL 4394576, at *7–8. Even if Plaintiffs' arguments were not waived, the NOID process satisfied any due process rights Plaintiffs held before the BIA and USCIS. *Bangura*, 2019 WL 418858, at *2; *Armah-El-Aziz*, 2015 WL 4394576, at *7–8.

## IV. CONCLUSION

While the Court acknowledges the profound consequences that follow a denial of a I-130 Petition under 8 U.S.C. § 1154(c), the Court is constrained to affirm the agencies' decisions on this record. *Ogbolumani*, 557 F.3d at 736; *Armah-El-Aziz*, 2015 WL 4394576, at *7. Accordingly, for the reasons stated above, and for good cause shown, Plaintiffs' Motion for Summary Judgment (Dkt. 26) is **DENIED** and Defendants' Motion for Summary Judgment (Dkt. 30) is **GRANTED**.

It is **SO ORDERED**.

March 6, 2019
Alexandria, Virginia

Liam O'Grady
United States District Judge